NO. 07-00-0459-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

JUNE 29, 2001

______________________________

DEMETRIUS FOSTER, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_________________________________

FROM THE 137
TH
 DISTRICT COURT OF LUBBOCK COUNTY;

NO. 97-425548; HONORABLE CECIL G. PURYEAR, JUDGE

_______________________________

Before BOYD, C.J., and QUINN and JOHNSON, JJ.

This appeal arises from appellant Demetrius Foster’s conviction for the offense of recklessly causing injury to a child and the jury-assessed punishment of 12 years confinement in the Institutional Divisional of the Department of Criminal Justice.  Appellant challenges that conviction by 11 issues.  Disagreeing that reversal is required, we affirm the judgment of the trial court.

Appellant, who was the boyfriend of the mother of the two and a half-year-old victim, was left in charge of his care while the mother was at work.  After the child had an accident in his diaper, appellant ran a tub of lukewarm water and placed the child in it.  He then went to check on some food which he thought was burning and began washing dishes.  While doing so, he heard the child scream and returned to the bathroom to see the child standing near the front of the tub on one foot and steam coming from the water.  The child suffered second and third degree burns over portions of his feet, legs, and buttocks, as well as some burns on the upper right side of his body.   

In his first three issues, appellant, who is black, alleges error on the part of the trial court in failing to grant his 
Batson 
motion during voir dire in violation of (1) the equal protection clauses of the United States and Texas constitutions and article 35.261 of the Code of Criminal Procedure, (2) the due process clause of the United States constitution as applied to the states and the due course of law clause of the Texas constitution, and (3) the impartial jury guarantee of the fifth amendment of the United States and Texas constitutions.  These issues arise from the State’s exercise of a peremptory strike against the only black member on the venire panel.  Appellant argues that the State’s explanation for the exercise of that strike was pretextual and did not overcome the presumption that the strike was racially motivated.  Because appellant argues these issues together, we will also address them in that same fashion.

The equal protection clause prohibits purposeful discrimination by the State in using its peremptory strikes.  
Batson v. Kentucky, 
476 U.S. 79, 84, 106 S.Ct. 1712, 1716, 90 L.Ed.2d 69 (1986). Once appellant has made out a prima facie case, the burden shifts to the prosecution to provide race-neutral reasons for striking venire members of the same race as appellant.  After such reasons are provided, appellant has the burden to establish that the offered reasons are a pretext for discrimination.  
Pondexter v. State, 
942 S.W.2d 577, 581 (Tex.Crim.App. 1996), 
cert. denied, 
522 U.S. 825, 118 S.Ct. 85, 139 L.Ed.2d 42 (1997); 
Williams v. State
, 804 S.W.2d 95, 97 (Tex.Crim.App.), 
cert. denied, 
501 U.S. 1239, 111 S.Ct. 2875, 115 L.Ed.2d 1038 (1991).  The reviewing court must determine whether the trial court’s findings were clearly erroneous after examining the record in the light most favorable to the trial court’s ruling.  
Pondexter
, 942 S.W.2d at 581.  

Upon appellant’s objection, the State presented several race-neutral reasons for its strike.  Those reasons included the fact that juror Bobby Glenn Williams did not completely fill out his juror information card, he lived in the general neighborhood of appellant, and it was the State’s observation that, during the State’s voir dire, the juror was not paying attention but that, during appellant’s voir dire, the juror gave full attention.  The State’s notes also included notations that the juror “smiled a lot at Chuck”
(footnote: 1) and was a “stepfather.”  In its ruling, the trial court merely stated that “the Batson Challenge is denied.”

Because the State gave its reasons for striking the venire member, we will not consider whether appellant made out a prima facie case of racial discrimination, but will examine the explanation provided by the State to determination whether the trial court’s ruling was clearly erroneous. 
 See Gaines v. State
, 811 S.W.2d 245, 247 (Tex.App.-- Dallas 1991, pet. ref’d).   
Appellant points out that the State accepted another juror, Nicole Villalobos, who also omitted spousal information from the juror information card and, in reliance on 
Keeton v. State
, 749 S.W.2d 861 (Tex.Crim.App. 1988), argues that such an explanation is suspect when the State does not strike a non-minority with the same characteristic.  Appellant also notes that two other jurors who were seated were either stepchildren or a step-parent.
(footnote: 2)  Appellant relies on 
Emerson v. State
, 851 S.W.2d 269 (Tex.Crim.App. 1993) in positing that these explanations were insufficient as a matter of law.   

An explanation for striking a minority juror is suspect when the State does not strike persons with the same or similar characteristics.  
Emerson v. State, 
851 S.W.2d at 274; 
Keeton, 
749 S.W.2d at 866.  In 
Emerson, 
the prosecutor struck a black venire person because she was unemployed.  However, three non-black jurors failed to state their employment status and the State did not strike those persons.  The court found that the explanation offered by the State was insufficient as a matter of law.  
Emerson, 
851 S.W.2d
 
at 274.

Nevertheless, it has also been held that the fact that a venire member who has been struck has been treated differently than others with the same problem does not automatically establish disparate treatment when the State has offered multiple race-neutral reasons for challenging the prospective juror.  
Pondexter
, 942 S.W.2d at 582.  If the State has offered more than one plausible reason for striking a venire person, it is proper to review the reasons in their entirety to assess whether the State’s explanation was pretextual.  
Cantu v. State
, 842 S.W.2d 667, 689 (Tex.Crim.App. 1992), 
cert. denied, 
509 U.S. 926, 113 S.Ct. 3046, 125 L.Ed.2d 731 (1993).  

The inability to properly fill out a juror information card has been held to be a racially neutral reason for excluding a juror.  
Newsome v. State
, 829 S.W.2d 260, 266 (Tex.App.-- Dallas 1992, no pet.).  In this instance, the juror left blank the information requiring the name, occupation, and employer of his spouse if married.  Assuming Williams was not married, we cannot say that the fact those spaces were left blank necessarily reflects an inability to fill out the card.    

However, inattentiveness is also a racially neutral reason for exercising a peremptory strike 
and, because great deference is given to the trial judge in assessing the credibility of the prosecutor and all other surrounding facts and circumstances, we cannot say that such a basis was clearly erroneous.  
See Harrell v. State
, 882 S.W.2d 65, 67 (Tex.App.--Houston [14
th
 Dist.] 1994, pet. ref’d).  Appellant argues, pursuant to 
Yarborough v. State, 
947 S.W.2d 892 (Tex.Crim.App. 1997), that the rebuttal affidavit submitted by  Williams at the hearing on the motion for new trial, the lack of questioning of Williams during voir dire, and the absence of factual findings by the trial judge lead to the conclusion that the “demeanor” explanation offered by the State was not sufficient to overcome its prima facie case.  In 
Yarborough
, the question presented was whether the prosecutor’s unchallenged statement about a venire member’s demeanor constituted adequate support for a trial court’s finding in a 
Batson 
hearing. 
 
Id.
 at 893.  The court found that both the trial court and appellate court may consider such factors as the quantity and quality of either party’s examination of the challenged juror, whether the 
Batson 
movant cross-examined the prosecutor, rebutted the description of the venire member, proved that venire members of similar demeanor were not struck, and whether the judge was asked to rule on any conflict of fact.  
Id. 
at 896.

At the hearing on appellant’s motion for new trial, appellant submitted an affidavit from Williams in which he averred that he “paid equal attention to both the prosecutor and the defense attorney, and paid close attention to both.”  He also asserted that he is “a person who smiles” but that he “did not smile a lot at the defense attorney, anymore than at the prosecutor.”  He additionally stated that he had a stepfather, but was not a step-parent.  Nevertheless, this evidence was not before the trial court at the time of its ruling on appellant’s challenge.  On review, an appellate court may not consider evidence which was not presented to the trial court during voir dire or at the 
Batson
 hearing.  
Parra v. State
, 935 S.W.2d 862, 869-70 (Tex.App.--Texarkana 1996, pet. ref’d); 
see also
 
Vargas v. State
, 838 S.W.2d 552, 556-57 (Tex.Crim.App. 1992); 
Young v. State
, 826 S.W.2d 141, 146 (Tex.Crim.App. 1991).  

Furthermore, appellant did not cross-examine the State’s attorney on the proffered assertion of inattentiveness or whether other venire members of similar demeanor were not struck.  While the individual questioning of Williams during voir dire was not extensive, he was asked about his ability to withhold a decision on punishment until he was aware of the facts and his belief as to the primary purpose of punishment.  Appellant also questioned Williams as to his feelings about whether appellant was entitled to receive the presumption of innocence.  The trial court, having the opportunity to observe the demeanor of the venire members during voir dire, was in a better position to judge the credibility of the non-neutral explanation asserted by the State, and we cannot say that the decision was clearly erroneous.  Appellant’s first three issues are overruled.

  In his fourth issue, appellant contends the trial court erred by refusing to strike for cause a prospective juror who had a bias or prejudice against the law of probation.  Appellant alleges that Nicole Villalobos refused at least four times to consider or apply the law with respect to punishment and never unambiguously stated she would follow the law on punishment.  Because of that fact, it is appellant’s position that she cannot be rehabilitated by the court or the State by reciting that she will follow the evidence.  Furthermore, appellant identified an objectionable juror he had to accept because he was forced to use a peremptory strike to remove Villalobos from the jury.    

A challenge may be made for cause when a particular juror has a bias or prejudice against any of the law applicable to the case upon which the defense is entitled to rely, either as a defense to some phase of the offense, as a mitigation thereof, or with respect to the punishment therefor.  Tex. Code Crim. Proc. Ann. art. 35.16(c)(2) (Vernon Supp. 2001).  Bias against the law is a refusal to consider or apply the relevant law, and it exists when a venire member’s beliefs or opinions prevent or substantially impair the performance of his duties in accordance with the instructions and his oath.  
Sadler v. State
, 977 S.W.2d 140, 142 (Tex.Crim.App. 1998).  Furthermore, jurors must be able to consider the full range of punishment for the crime as defined by law.  
Id.  
 

The trial court has discretion in ruling on challenges for cause and its rulings will not be disturbed absent an abuse of discretion.  
Ladd v. State
, 3 S.W.3d 547, 559 (Tex.Crim.App. 1999), 
cert. denied,
 529 U.S. 1070, 120 S.Ct. 1680, 146 L.Ed.2d 487 (2000).   An appellate court examines the record as a whole to determine if there is support for the trial court’s rulings.  
Id.  
When a potential juror vacillates on the question of his or her ability to follow the law, deference is given to the findings of the trial court.  
Ladd
, 3 S.W.3d at 559; 
Howard v. State
, 941 S.W.2d 102, 107 (Tex.Crim.App. 1996).

The following examination took place with respect to juror Villalobos:

MR. LANEHART:  Ms. Villalobos, a question was asked about whether you might consider probation as a punishment in the case, and I believe it was your opinion that probation was not a punishment, just a slap on the wrist; is that correct?

MS. VILLALOBOS:  Yes, sir.

MR. LANEHART:  Okay.  Under those circumstances do you feel that it would ever be appropriate to - - to - - to vote for or to consider probation as a punishment in a case if you don’t consider it punishment?

MS. VILLALOBOS:  If that’s what they deserve - - if that’s all they deserve, then - - I’ll have to hear the case.

MR. LANEHART:  I understand.  But you understand that the question really is:  In a first-degree felony case in which a person has been convicted of intentionally or knowingly causing serious bodily injury to a child, would you consider probation as an appropriate punishment in any case?

MS. VILLALOBOS:  No, sir.

THE COURT:  Questions?

MR. POWELL:  Well, now, your answer has changed since the first time we talked to you about that and I want to make sure we’re clear since your answer has changed.  Are you telling the Court that under any circumstances, not this case - -

MS. VILLALOBOS:  Uh-huh.

MR. POWELL:  - - but any circumstances that you can imagine in your own mind, you are telling the Court that you are automatically eliminating probation as an option in any kind of case?

MR. LANEHART:  In any kind of first-degree intentionally and knowingly

causing serious bodily injury to a child.

MS. VILLALOBOS:  That’s what I mean.

MR. POWELL:  That’s what we’re talking about.

MS. VILLALOBOS:  Yeah.

MR. POWELL:  That’s what I’m talking about.  Not in this case, but in any case, you can’t think of a scenario in your own mind where you - - you don’t have to give it, but you could consider it as a viable option, if that’s what the facts and circumstances demand?  

MS. VILLALOBOS:  If that’s what the facts and circumstances demand, I would be willing to give probation.  But if I heard the case and at the end of the case I decided that was not what I wanted to do - -

MR. POWELL:  Well, that’s absolutely what you have an absolute right to do, that right now, before you hear any facts and circumstances, is say that I’m not ruling it out as an option.

MS. VILLALOBOS:  Okay.  I’m not ruling it out as an option until I hear the

case.

MR. LANEHART:  Even in a first-degree felony?

MS. VILLALOBOS:  Even in a first-degree felony.

MR. LANEHART:  When someone has been found guilty of a first-degree felony?

MS. VILLALOBOS:  How do you know if they are found guilty if you haven’t heard the trial?

MR. LANEHART:  Well, we’re assuming at this point - -

MS. VILLALOBOS:  Oh, okay.  Not if you’re just assuming.

MR. LANEHART:  I’ll challenge, Your Honor.

THE COURT:  Okay.  Ms. Villalobos, at this point have you made up your mind one way or the other as to the guilt or innocence of this Defendant?

MS. VILLALOBOS:  No, sir.

THE COURT:  Okay.  Have you made up your mind one way or the other as to what punishment ought to be assessed in this case?

MS. VILLALOBOS:  No, sir.

THE COURT:  Okay.  And what you’re telling me, I think, and what I’ve heard, is that you are willing to listen to the facts and the evidence in the case and first determine whether or not the Defendant is guilty of the charges?

MS. VILLALOBOS:  Yes, sir.

THE COURT:  And then, if he is found guilty, listen to the facts and theevidence during the punishment phase and base your decision on punishment on what you hear here in the courtroom; is that correct?

MS. VILLALOBOS:  Yes, sir.

THE COURT:  And you have not ruled out any options with regard to thepunishment in this case; in other words, again, based upon the facts and circumstances, if you find that probation - - five years probation is - -

MS. VILLALOBOS:  Yes, sir.

THE COURT:  - - the correct sentence in this Cause, can you enter that sentence?

MS. VILLALOBOS:  Yes, sir.

THE COURT:  By the same token, if you find that life in prison is the proper sentence, based upon the facts and evidence, can you render that sentence?

MS. VILLALOBOS:  Yes, sir.

THE COURT:  Okay.  The court finds that she is qualified. 

A venire person is not challengeable for cause simply because she cannot at that particular point envision a scenario in which the minimum punishment would be appropriate since this does not mean that she could not consider the minimum punishment if an appropriate scenario was presented at trial.  
Ladd
, 3 S.W.3d at 559.  Upon questioning by the court, Villalobos indicated she had not ruled out any options and was willing to assess the full range of punishment from probation to life imprisonment, depending upon the facts and evidence presented in the courtroom.  Such a record does not establish that  Villalobos was biased as a matter of law, and we find no abuse of discretion on the part of the trial court in refusing to strike her for cause.  Appellant’s fourth issue is overruled.

In his fifth issue, appellant contends he was denied effective assistance of counsel during the guilt/innocence phase of the trial in several respects, including the failure to request jury charges on lesser-included offenses, the failure to interview the alleged victim, the failure to obtain an expert witness to rebut the State’s medical expert, who testified that the pattern of burns indicated the victim was laid or held in a tub of scalding water, and the failure to adequately impeach the State’s medical expert through cross-examination.  The standards by which we review the effective assistance of counsel are now so well known that it is unnecessary for us to recite them.  
See Strickland v. Washington
, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); 
Hernandez v. State
, 726 S.W.2d 53, 55 (Tex.Crim.App. 1986).  In addition to showing deficient performance, appellant must show that there is a reasonable probability that, but for counsel’s errors, the result of the proceeding would have been different, and a reasonable probability is one sufficient to undermine confidence in the outcome.  
Strickland
, 466 U.S. at 694.  We must also bear in mind that there is a strong presumption that trial counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.  
Id. 
at 690.  

Initially, appellant argues that his trial counsel failed to request essential jury charges on lesser-included offenses.  The jury charge permitted the jury to find appellant guilty of either intentionally and knowingly causing serious bodily injury to a child younger than 14 or recklessly causing serious bodily injury to a child younger than 14.  The jury found appellant guilty of the lesser offense of recklessly causing serious bodily injury.  Appellant posits that a charge should also have been requested on the lesser-included offense of negligently causing serious bodily injury to a child, which would have permitted appellant to have been convicted of only a state jail felony with a maximum period of confinement of two years.  Additionally, he claims that the offense of endangering a child is a lesser-included offense because it could have been established by proof of the same facts or less than all the facts that established the offense charged. 

The State argues in opposition that the decision not to request charges on the other lesser-included offenses was a part of trial counsel’s trial strategy in that appellant was seeking an acquittal.  Additionally, the State points out that there are no authorities which hold that endangerment of a child is a lesser-included offense of injury to a child and, because that offense is also a state jail felony, there would have been no point in requesting a charge on that offense in addition to requesting one on negligently injuring a child. 

 A defense lawyer’s failure to request a jury instruction can render his assistance ineffective if, under the facts of the case, the trial judge would have erred in refusing the instruction.  
Vasquez v. State
, 830 S.W.2d 948, 951 (Tex.Crim.App. 1992).  In order to show that counsel’s performance was deficient, the defendant must show that he was entitled to an instruction by establishing that the lesser-included offense must be included within the proof necessary to establish the offense charged and that there is evidence that if guilty of an offense, he was guilty only of the lesser one.  
Rousseau v. State
, 855 S.W.2d 666, 672 (Tex.Crim.App.), 
cert. denied, 
510 U.S. 919, 114 S.Ct. 313, 126 L.Ed.2d 260 (1993).  It may also be reasonable trial strategy not to request an instruction on a lesser- included offense, and the defendant bears the burden of rebutting the presumption that the failure to seek such an instruction was not sound trial strategy.  
See Jackson v. State
, 877 S.W.2d 768, 771 (Tex.Crim.App. 1994).  

A person acts recklessly, or is reckless with respect to the circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur.  Tex. Pen. Code Ann. § 6.03(c) (Vernon 1994).  A person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur.  
Id. 
§ 6.03(d).  Therefore, the difference between the offense for which appellant was convicted and one of the lesser-included offenses which appellant claims should have been charged is the degree of culpable mental state required.  A person also commits an offense of endangering a child if he intentionally, knowingly, recklessly or with criminal negligence, by act or omission, engages in conduct that places a child younger than 15 years in imminent danger of death, bodily injury or physical or mental impairment.  Tex. Pen. Code Ann. § 22.041(c) (Vernon Supp. 2001). 

Appellant admitted that he left the victim alone in the bathtub while the water was running.  He also took “sole responsibility” for what happened to the child and admitted that he should not have left him alone in the tub.  He further stated that he did not immerse the child, did not intend to harm the child and does not know the exact manner in which the burns were received.  There was also undisputed evidence at trial that the child received severe bodily injury from the burns, which required numerous skin grafts.   

At the hearing on the motion for new trial, trial counsel testified that he was seeking an acquittal for appellant.  He also stated that while the result was “a minor victory” for the defense, “it wasn’t what we were hoping for.”  He further averred that, “in hindsight,” he wished he had requested a charge on criminal negligence and that there was some evidence in the case which could have supported that charge.  Moreover, after talking to some of the jurors, he believed some of them might have considered the state jail felony of criminal negligence.  He also believed there was an argument to be made that reckless endangerment is a lesser-included offense.  

The assistance of counsel is not to be judged by hindsight.  
See Garcia v. State
, 887 S.W.2d 862, 881 (Tex.Crim.App. 1994), 
cert. denied, 
514 U.S. 1021, 115 S.Ct. 1368, 131 L.Ed.2d 223 (1995).  Furthermore, it is not uncommon for defense counsel to employ an all-or-nothing strategy at trial in seeking an acquittal.  
Wood v. State
, 4 S.W.3d 85, 88 (Tex.App.--Fort Worth 1999, pet. ref’d).  If there is some evidence tending to prove that the defendant is not guilty of the charged offense, it could be reasonable trial strategy to forego a charge on a lesser offense and argue for acquittal on the greater offense.  
Id.  
  However, in this case, trial counsel did not really employ an all-or-nothing strategy since there was an instruction on one lesser-included offense of which the jury found appellant guilty.  Further, appellant admitted his responsibility for the injuries to the child by leaving him alone in the bathtub.  

A conviction of a state jail felony would have permitted the jury to assess a punishment of confinement in a state jail for any term of not more than two years or less then 180 days, Tex. Pen. Code Ann. § 12.35(a) (Vernon 1994), whereas the range of punishment for the offense of which appellant was convicted was not more than 20 years or less than two years.  Even assuming arguendo that defense should have requested the inclusion of the lesser-included offense of criminal negligence, we must also decide whether it is probable that the outcome of the proceeding would have been different if the instruction had been included.  The jury assessed a punishment of 12 years, which is in the upper half of the punishment range for recklessly causing the injuries, when it could have assessed a punishment at the lower end of the range, such as two years, or recommended that appellant be placed on probation. Therefore, it does not appear that the jury considered appellant to have had a low degree of responsibility for the convicted offense. 
Thus, we cannot say that there is a reasonable probability that the outcome of the proceeding would have been different if the jury had been charged on the offense of criminal negligence.  
See Williams v. State
, 851 S.W.2d 282, 287 (Tex.Crim.App. 1993) (in which the court refused to consider a 
per se
 rule that a defendant suffers egregious harm when the trial court fails to instruct on a lesser-included offense and the jury assesses a sentence beyond the punishment range for the lesser offense but within the applicable range for the greater offense.)
(footnote: 3)  The offense of endangerment is also a state jail felony.  Tex. Pen. Code Ann. § 22.041(f) (Vernon Supp. 2001).  Therefore, assuming arguendo that it is a lesser-included offense, the analysis is the same and there was no separate harm in failing to instruct on it. 

Appellant also claims ineffective assistance in trial counsel’s failure to interview the victim.  The victim was not called as a witness at trial.  However, the victim’s aunt testified under a bill of exception that when she asked the child how the accident had happened sometime after he got out of the hospital, the child replied, “My Daddy Dee went in the kitchen and I turned off the water and burned my legs.”  Because there was a possibility that the testimony would have been favorable to appellant at trial, appellant claims that counsel’s performance was deficient in not at least interviewing the child.  At the motion for new trial hearing, trial counsel stated that he talked to the victim’s grandmother with whom the child was living, and that his conversation with her led him to discontinue his attempts to interview the child.  The grandmother told him she did not want him to talk to the child.  When he asked her what the child would say about appellant, she replied that he did not remember appellant. 

It is true that trial counsel has a duty to seek out and interview potential witnesses and the failure to do so constitutes ineffective assistance of counsel where a viable defense is not advanced.  
Ex parte Ybarra
, 629 S.W.2d 943, 946 (Tex.Crim.App. 1982).   However, in this instance, the potential witness was a six-year-old child who was only two- and-a-half years old at the time of the incident.  Furthermore, the caretaker of the child was unwilling to make him available for an interview, and counsel had reason to believe that the child did not even remember appellant or the incident.  There was also no testimony presented at the hearing on the motion for new trial to show that he did remember the incident and/or appellant, and what his testimony would have been.  Such testimony by a five-year-old witness was presented in 
Smith v. State
, 894 S.W.2d 876 (Tex.App.--Amarillo 1995, pet. ref’d), in which we held there was ineffective assistance of counsel because of a failure to call several witnesses at trial.  
Id.
 at 879-80.  However, under the circumstances here, we do not believe that appellant has overcome the presumption that his counsel’s actions were reasonable and the result of sound trial strategy.  We also note that appellant’s defense that the injuries occurred as a result of an accident was presented by his own testimony.     

In his third complaint of ineffective assistance of counsel, appellant claims his counsel’s performance was deficient in not obtaining an expert to contradict the testimony of Dr. Phillip Alford that the pattern of burns was not consistent with the story provided by appellant and that someone laid or perhaps held the child in a tub of scalding water.  To demonstrate prejudice from the failure to call witnesses, it must be shown that the witnesses would in fact have testified and that the testimony would have been favorable to the accused.  
Hunnicutt v. State
, 531 S.W.2d 618, 625 (Tex.Crim.App. 1976), 
overruled on other grounds by Hurley v. State
, 606 S.W.2d 887 (Tex.Crim.App. 1980).  At the new trial hearing, Dr. H. D. Peterson, a general surgeon and plastic surgeon with expertise in burn surgery who has testified over 30 times in child abuse cases, stated he read appellant’s statement and a portion of his testimony, as well as part of the medical records and reviewed some of the photographs.  He said the burn pattern was compatible with appellant’s version of the events, 
i.e.
, essentially that the child stood, turned the water so it was hotter, and then fell into the water.  Appellant’s trial counsel also averred at the new trial hearing that he had reason to believe that some of the jurors found Dr. Alford’s trial testimony persuasive that the child had been immersed or held in the tub.  

Appellant cites 
Winn v. State
, 871 S.W.2d 756, 761 (Tex.App.--Corpus Christi 1993, no pet.), as authority for the position that the failure to call an expert constitutes ineffective assistance of counsel.  In that case, trial counsel testified that he had not contacted any experts because he did not have the funds, did not know any local experts, and did not think it was real important.  
Id. 
at 760.  In the case at bar, no testimony was presented by trial counsel as to whether he had contacted any expert witnesses or why he may have decided not to call an expert witness.  Although it is possible that the inclusion of testimony by an expert such as Dr. Peterson would have provided a more effective defense, in the absence of evidence as to the reasons why trial counsel chose not to call an expert witness, we will not speculate that the decision did not constitute reasonable trial strategy.  
See Beck v. State
, 976 S.W.2d 265, 266 (Tex.App.--Amarillo 1998, pet. ref’d).

Finally, appellant claims his trial counsel was ineffective in cross-examining Dr.  Alford at trial by not using testimony elicited during a pretrial hearing to impeach him.  During the pretrial hearing, Alford stated that it would be difficult to say if the child could have slipped in the tub and sustained an immersion injury.  Further, in response to the question of whether he saw any evidence that the child was held down in the hot water, Alford stated he did not believe that the child needed to be held because if he could not crawl out of the tub, there was no place for him to go, which contrasted with other testimony at trial that the child should have been able to crawl out.   Appellant also claims  his counsel elicited an equivocation from Alford at the pretrial hearing as to whether water might have still been running and began to get hot or the child was injured by hot water already in the tub.  If these same statements had been elicited at trial, appellant opines, they would have helped to discredit Alford’s opinion that the child’s injuries were not consistent with appellant’s recitation of the facts.  

However, at trial, Alford admitted that he could not say how the burns occurred, only that they were consistent with an immersion.  Alford also stated he did not talk to appellant and therefore did not know what appellant said about the incident or remember what he himself had been told about it.  Since cross-examination can often serve to bolster the very testimony sought to be impeached, we cannot say it was not reasonable trial strategy for trial counsel to limit his cross-examination in this regard.  Furthermore, the jury found appellant guilty of the lesser-included offense, which would tend to indicate counsel was reasonably effective in his representation.  In reviewing the entire record, no one act or even the totality of the representation amounted to appellant receiving ineffective assistance.  Appellant’s fifth issue is overruled.

In appellant’s sixth issue, he similarly contends he was denied effective assistance of counsel at the punishment phase of the hearing in that his counsel failed to offer any character witnesses.  He cites 
Milburn v. State, 
15 S.W.3d 267 (Tex.App.--Houston [14
th
 Dist.] 2000, pet. ref’d), for the proposition that the failure to present any mitigating evidence at the punishment phase constitutes ineffective assistance of counsel.  In 
Milburn
, trial counsel failed to put on any character testimony at all, in spite of the fact that there were at least 20 persons willing to testify.  
Id. 
at 269-70.  

Appellant’s counsel did put on character testimony during the guilt/innocence phase, which included testimony from one current and one former work supervisor, a former co-worker, and a personal friend.  At the commencement of the punishment hearing, appellant’s counsel re-offered all of the evidence he put on during the guilt/innocence phase.  Nevertheless, appellant argues that this type of testimony was more particularly suited for the punishment phase of the trial.  By way of a bill of exception at the new trial hearing, appellant offered testimony from three additional character witnesses, including two former supervisors and another co-worker, who testified that appellant was a good candidate for probation and they would be willing to leave their children in his care.  

Counsel stated that, in hindsight, he would have put on more character evidence during the punishment phase.  However, appellant has failed to present evidence as to why trial counsel chose to use the witnesses he did, why he offered them originally at the guilt/innocence phase, and his reasons at the time for not putting on additional character evidence.  Without supporting evidence, we will not presume that counsel’s performance was anything other than sound trial strategy.  Appellant’s sixth issue is overruled.

Appellant’s seventh and eighth issues involve his allegations of juror misconduct in that juror Ida Tarbell told the other jury members during deliberations that skin grafts do not always take.  By his seventh issue, appellant contends the trial court erred in overruling his motion for new trial based on that juror misconduct and, by his eighth issue, appellant argues that the testimony of Tarbell should have been admitted at the new trial hearing.  Rule 21.3 of the Rules of Appellate Procedure provides that a defendant must be granted a motion for new trial when, after retiring to deliberate, the jury has received other evidence.  Tex. R. App. P. 21.3(f).  Here, the trial court refused to receive any testimony from Tarbell based on Rule 606(b) of the Rules of Evidence.  That rule provides:

(b)  Inquiry Into Validity of Verdict or Indictment.  
Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the jury’s deliberations, or to the effect of anything on any juror’s mind or emotions or mental processes, as influencing any juror’s assent to or dissent from the verdict or indictment.  Nor may a juror’s affidavit or any statement by a juror concerning any matter about which the juror would be precluded from testifying be admitted in evidence for any of these purposes.  However, a juror may testify: (1) whether any outside influence was improperly brought to bear upon any juror; or (2) to rebut a claim that the juror was not qualified to serve.  

Tex. R. Evid. 606(b).  It is appellant’s contention that there is an inherent conflict between Rule 606(b) on the one hand and Rule of Appellate Procedure 21.3 and the Texas constitution on the other hand.  Further, even without the testimony of Tarbell, he argues that his counsel’s affidavit was sufficient to raise the issue and show that the evidence was received by the jury.  He also posits that the evidence was detrimental to his client.

The allegations in a motion for new trial must be proved by competent evidence, which must be received by the court before it can be considered.  
Lincicome v. State
, 3 S.W.3d 644, 646 (Tex.App.--Amarillo 1999, no pet.).  Rule 606(b) appears to limit the instances in which a juror may testify as to the validity of a verdict by defining the type of evidence that can be received for the purposes of proving the jury received “other evidence.”  A juror may only testify as to “outside influences” brought to bear on him or another juror.   

A number of courts have refused to find that evidentiary Rule 606(b) and appellate Rule 21.3 are inconsistent with one other.  In addressing this issue, the court in 
Sanders v. State
, 1 S.W.3d 885 (Tex.App.--Austin, 1999, no pet.), stated:

Rule 606(b) does not purport to redefine juror misconduct, nor does it alter the grounds for obtaining a new trial in criminal cases.  By generally prohibiting jurors from testifying as to matters and statements occurring during deliberations, rule 606(b) unquestionably makes proving jury misconduct in criminal trials more difficult than it was under the prior rules.  But the rule does not preclude proof of jury misconduct by other means, such as through the testimony of a nonjuror with personal knowledge of the misconduct.

Id. 
at 887; 
see also Hicks v. State, 
15 S.W.3d 626, 639 (Tex.App.--Houston [14
th
 Dist.] 2000, pet. ref’d); 
Hines v. State
, 3 S.W.3d 618, 621-22 (Tex.App.--Texarkana 1999, pet. ref’d).  Rule 606(b) has also been held constitutional.  
Golden Eagle Archery, Inc. v. Jackson, 
24 S.W.3d 362, 375 (Tex. 2000).
  

However, appellant argues that the information supplied by Tarbell to the jury  constitutes an “outside influence” because it was outside the evidence offered at trial, and therefore she should have been permitted to testify.  It has been held that outside influences must originate from sources other than the jurors themselves.
  Id.
 at 370; 
 Hines
, 3 S.W.3d 618 at 623; 
Soliz v. Saenz
, 779 S.W.2d 929, 932 (Tex.App.--Corpus Christi 1989, writ denied); 
Kendall v. Whataburger, Inc.
, 759 S.W.2d 751, 755 (Tex.App.-- Houston [1
st
 Dist.] 1988, no writ).  Therefore, based on the language of the rule and the reasoning of the cited authorities, we must conclude that the trial court properly refused to allow Tarbell’s testimony.  

The question then remains whether we can consider the affidavit of appellant’s counsel, which was admitted into evidence, as to the testimony of Tarbell.  Appellant argues this evidence is admissible because the declarant is unavailable (due to the court’s ruling) and it is a statement against interest.  Further, he posits, because it is uncontradicted, it is also adequate to prove the allegation of jury misconduct.  That affidavit refers to the preparation of the affidavit of Tarbell, which she decided not to sign.  It recites in pertinent part:

Ms. Tarbell retained the only copy of the affidavit.  The affidavit basically states that during punishment deliberations, Ms. Tarbell told the other jurors that skin grafts do not always take - meaning they can become infected or not grow properly - and that further surgeries may be necessary.  This evidence was not presented to the jury during the trial.  The affidavit also stated that Ms. Tarbell did not claim medical expertise.  It also states that the comment about skin grafts was made within the context of spirited discussion and that she is not certain that all jurors heard her comments.  

There is no showing that Tarbell was unavailable for the hearing, only that the court refused to hear her testimony.  We fail to see how it is proper to bootstrap the contents of an unsigned affidavit into competent testimony when the judge has already properly refused to hear that same testimony if offered in person.  
See Lincicome
, 3 S.W.3d at 647.  Because there was no evidence of juror misconduct, the trial court did not err in overruling the motion for new trial.  Appellant’s seventh and eighth issues are overruled.

Appellant’s ninth and tenth issues challenge the legal and factual sufficiency of the evidence to sustain his conviction.  The standards by which we review the sufficiency of the evidence are well known, and we will not recite them again.  
See Jackson v. Virginia, 
443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); 
Johnson v. State
, 23 S.W.3d 1, 7 (Tex.Crim.App. 2000); Clewis
 v. State
, 922 S.W.2d 126, 129 (Tex.Crim.App. 1996).  In making our review, however, we must remember that the trier of fact is the sole judge of the weight and credibility of the testimony, and we may not substitute our judgment for that of the jury.  
Santellan v. State
, 939 S.W.2d 155, 165 (Tex.Crim.App. 1997).  

It is appellant’s contention that the evidence does not support the required culpable mental state,
 i.e.
, that he recklessly caused serious bodily injury to a child.  As previously stated, a person acts recklessly when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur.  The risk must be of such a nature and degree that to disregard it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor’s standpoint.  Tex. Pen. Code Ann. § 6.03(d) (Vernon 1994).   

An accused’s mental state is almost always proven by circumstantial evidence.  
Morales v. State,
 828 S.W.2d 261, 263 (Tex.App.--Amarillo 1992), 
aff’d, 
853 S.W.2d 583 (Tex.Crim.App. 1993).  Mental state may be inferred by words, acts, conduct, and the surrounding circumstances.  
Ledesma v. State
, 677 S.W.2d 529, 531 (Tex.Crim.App. 1984); 
Dues v. State
, 634 S.W.2d 304, 305 (Tex.Crim.App. 1982).  The jury is the sole judge of the weight and credibility of the witnesses, and it may believe or disbelieve all or part of any testimony.  
Williams v. State
, 692 S.W.2d 671, 676 (Tex.Crim.App. 1984). Appellant argues that because the water in the tub was lukewarm when he left to check on the food in the oven, there was no evidence of a substantial and justifiable risk that the child would get seriously burned.  

As already noted, appellant was convicted of a lesser-included offense.  If a defendant requests or does not object to the submission of a lesser-included offense and accepts the benefits of such a charge, he is estopped  from challenging the legal or factual sufficiency of the evidence.  
State v. Lee
, 818 S.W.2d 778, 781 (Tex.Crim.App. 1991), 
overruled on other grounds by Moore v. State, 
969 S.W.2d 4 (Tex.Crim.App. 1998); 
Otting v. State
, 8 S.W.3d 681, 687 (Tex.App.--Austin 1999, pet. ref’d, untimely filed).   Even if appellant was not so estopped, it has been held that the evidence is sufficient to support a conviction when an adult has sole access to a child who is injured in his care.  
Garcia v. State
, 16 S.W.3d  401, 405 (Tex.App.--El Paso 2000, pet. ref’d).  In this case, there was evidence that appellant was alone with the child, appellant placed the child in a bathtub  of running water, the child was severely burned, appellant stopped to cancel a dentist’s appointment before taking the child to the hospital and told the dentist’s office he was standing in line to register for school, and appellant and the child’s mother went home from the hospital after being asked by the police to come to the police station and cleaned the house before going to the police department.   Further, there was medical testimony that the burns were the result of immersion, which were not consistent with the child standing and turning on the hot water himself, because he would only have been burned on his feet and ankles up to possibly his mid-calf instead of the more extensive burns he suffered and should also have suffered splash burns on his front chest instead of the right side.  Even if he fell, one or both arms should have been immersed.  Although appellant provided alternative explanations for the child’s injuries, such as his conversation with the dentist’s office and the cleaning of the apartment, it was within the province of the jury to accept or reject those explanations.  We find the evidence both legally and factually sufficient to support the conviction.  Appellant’s ninth and tenth issues are overruled. 

 In his final point of error, appellant claims his right to a speedy trial was violated by a 33-month delay between his indictment and his trial.  Appellant was indicted on September 17, 1997, and the case went to trial on June 21, 2000.  Appellant contends that delay was due to neglect of the State because the State’s expert witness was living in Montana and was not available.  Further, he argues, he was prejudiced because he was forced to stay away from the victim, who no longer remembered him by the time of trial.  Additionally, the victim’s mother was forced to give up custody of the child so that she could marry appellant.

In determining whether an accused has been afforded a speedy trial, four factors must be balanced:  (1) the length of the delay, (2) the reason for the delay, (3) the time at which the defendant asserted the right, and (4) the prejudice, if any, suffered by the defendant because of the delay.  
Barker v. Wingo
, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972).  The State concedes that the length of delay is sufficient to trigger consideration of the 
Barker
 factors.
  

The record reveals that appellant filed three motions for continuance, all of which were granted.  The first motion was filed on the basis that counsel had been newly hired and had not had sufficient time to investigate and prepare for trial.  The second motion was filed on the basis that counsel had requested discovery which had not yet been received and he had not had sufficient time to investigate the case.  The third continuance was requested on the basis that counsel had been provided several hundred pages of discovery and would not have sufficient time to review and digest the information prior to trial.   Orders granting those motions were signed on January 9, 1998,  June 19, 1998, and October 27, 1998.   The docket sheet also shows several passes from the docket in 1999 and at least one special setting prior to the date trial actually commenced.  The reasons for those passes and resettings are not disclosed on the docket.

Appellant’s trial counsel testified that on at least one occasion, when there was a special setting, he had a conflicting federal trial.  He also averred there were “several docket calls in which the case was either passed by agreement or was not reached for trial.”  Additionally, he stated that the main reason the case took so long to get to trial was the availability of the State’s expert witnesses.  He did aver that the State had requested a special setting on two occasions, one of which is the date trial actually started.

There is no real evidence that the State deliberately sought to postpone trial.  While there is a general statement that one or more delays may have been due to the unavailability of one or more of the State’s witnesses, there is no testimony as to which specific settings were affected for that reason or how many of those delays occurred.  The only specific delays noted in the record were the result of requests by appellant for postponement of trial.  There is also an indication that appellant agreed to whatever delays may have been requested by the State.  Consequently, the reasons for delay weigh less heavily against the State.  
State v. Munoz
, 991 S.W.2d 818, 822 (Tex.Crim.App. 1999); 
Anderson v. State
, 8 S.W.3d 387, 390 (Tex.App.--Amarillo 1999, pet. ref’d).  

It is also undisputed that appellant never invoked his right to a speedy trial until after his conviction.  The failure to expressly invoke one’s right to a speedy trial does not automatically result in the loss of that right.  
Barker, 
407 U.S. at 528.  Nevertheless, it is still the responsibility of the defendant to assert the right, and the failure to do so makes it difficult to prove that a defendant was denied a speedy trial and, furthermore, can be an indication that he did not desire one.  
Munoz
, 991 S.W.2d at 825-26. 

Finally, in examining any prejudice suffered by appellant, we must assess that prejudice with an eye toward the interests which the right to a speedy trial was designed to protect.  
Munoz
, 991 S.W.2d at 826.  Those interests include:  (1) preventing oppressive pretrial incarceration, (2) minimizing anxiety and concern of the accused, and (3) limiting the chance the accused’s defense will be impaired.  
Id.  
There is evidence that appellant was not incarcerated and was out on bond prior to trial.  Furthermore, there was no testimony from appellant as to any anxiety experienced while waiting on trial.
(footnote: 4)   There was testimony presented by trial counsel that he had been told by the victim’s grandmother prior to trial that the victim no longer remembered appellant, the implication being that the victim could have testified as to his relationship with appellant and as to what happened that day if he remembered appellant.  However, appellant requested three continuances within the first year after he was indicted.  Moreover, the victim was less than three years old at the time of the incident and there is no showing that he could have given competent trial testimony as to the incident even more than one year later.  Additionally, the choice of the victim’s mother between retaining custody of the child and marrying appellant is not one of interests the right to a speedy trial is designed to protect.  Upon weighing the possible prejudice with the other factors, we conclude the balance weighs against appellant.  While the delay was long, appellant did nothing to protect his right, and there is no showing of any substantial prejudice resulting from that delay.  Appellant’s issue is overruled.

In summary, we overrule all of appellant’s issues, and finding no reversible error, affirm the judgment of the trial court. 

John T. Boyd

 Chief Justice

Do not publish.

FOOTNOTES
1:
Appellant’s trial counsel was Chuck Lanehart.

2:
Appellant was living with the victim’s mother at the time of the incident and, after the incident, became her husband. 

3:
In 
Williams
, there was really only one offense of aggravated kidnapping with two possible punishment ranges, depending on the resolution of a specific fact issue.  

4:
Appellant was not present at the hearing on his motion in arrest of judgment which was heard on the same day as his motion for new trial because he had apparently been moved two days before to a state prison facility without the knowledge of his counsel, the State, or the court.