**Kelly Don SMITH, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 07–94–0136–CR.**

Court of Appeals of Texas,
Amarillo.

March 16, 1995.

Rehearing Overruled April 14, 1995.

Milner, Goranson, Sorrels, Udashen, Wells & Parker (George R. Milner, III), Dallas, for appellant.

John Vance, Dist. Atty. (April E. Smith, Asst. Dist. Atty.), Dallas, for appellee.

Before REYNOLDS, C.J., and BOYD and QUINN, JJ.

REYNOLDS, Chief Justice.

Charged by information with the misdemeanor offense of resisting arrest, and represented by appointed trial counsel, appellant Kelly Don Smith pleaded not guilty to, but was convicted of, the offense in a bench trial. His punishment was assessed at confinement in jail for 120 days, probated for 12 months,

and a $750 fine. With a sole point of error, appellant contends he received ineffective assistance of counsel at trial in violation of his constitutional right to effective assistance of counsel. Agreeing, we will reverse and remand.

The only testimony at the bench trial was adduced from Dallas police officer John Eric Larsen and appellant. Larsen testified that in response to a call of domestic violence in the early morning hours of 19 December 1992, he and his partner, officer Hooks, went to the home of appellant and his common law wife, Robin Wells. Wells met the officers at the door and told them that she had been assaulted by appellant. After observing red marks on Wells's face, neck, and top of her chest, and listening to her version of the incident, the officers entered the house and went into the bedroom where appellant, who appeared to be intoxicated, and their four year old son, Casey, were sleeping. Wells remained in the adjacent living room and, according to Larsen, "She was standing right outside the bedroom door," from where, he thought, "she saw all of it."

Upon entering the bedroom, the officers roused appellant and insisted that he sit up and speak with them. When appellant, who was noticeably troubled by their presence in his home, refused to cooperate with the officers' demands, they declared him to be under arrest for family violence, a class C misdemeanor, and explained that he would be required to accompany them to the police station for booking. However, appellant balked at the officers' command and, when Larsen attempted to handcuff him on the bed, appellant pulled his hands away from Larsen's grasp, lifted himself off the bed, and pushed Larsen in the chest with both hands in an attempt to leave the room. In "a big wrestling match" between the three of them, the officers got appellant down on the floor and, by Larsen applying a lateral vascular neck restraint on appellant, they were able to get his hands behind his back and handcuff him.

It was appellant's testimony that he had been to a Christmas party and was "buzzed" when he arrived home, at which time he and Wells had an altercation. He did not intentionally hurt Wells, and she received the red

marks when he hit her in trying to keep her from hitting him. He was asleep when the officers arrived, and he heard one of them say, "Get up, Son, you're going to jail." He replied, "I'm not going anywhere. I haven't done anything." The officers said, "Yeah, you beat up your wife," and while appellant was trying to talk with them, they "reached down and grabbed [him] and threw [him] down on the floor and handcuffed [him]." Appellant, who put his hands up to protect himself when he hit the floor, denied that he struggled with the officers, albeit he may have tried to keep them from grabbing his arms. He never pushed or shoved the officers; he "wouldn't do that in front of [his] little boy," who woke up and was crying.

Represented by his present counsel, appellant moved for a new trial on the ground that his trial counsel rendered ineffective assistance. Trial counsel's assistance was ineffective, appellant alleged, because he failed to conduct an independent investigation of the facts and failed to call witnesses, thereby denying him the right to effective assistance of counsel and due process of law guaranteed by the federal and state constitutions. See U.S. Const. amend. VI, XIV; Tex. Const. art. I, § 10.

At the hearing on the motion for new trial, Wells, referring to appellant as her ex-husband, testified that her first contact with appellant's trial attorney was on the morning of the trial when he interviewed her for "one or two" minutes about why the police were called and what happened before the resisting arrest events, but he did not ask her anything about the events themselves. She did not hear the attorney ask appellant his version of the events. She was sworn as a witness, stayed outside the courtroom during the trial and, although the attorney indicated she might be called as a witness, she was not called to testify.

Wells's testimony was that during the December 1992 incident, she was standing in the living room and was able to hear, and did hear, what had gone on and what the police officers said. Her narration of the conversation between the officers and appellant basically confirmed the account given by appellant at the bench trial. She did not hear a

struggle, or any sounds that suggested physical force or a fight was going on, and if a fight had occurred, she would have heard it. She stayed in the living room for about two or three minutes, and went into the bedroom when she heard her son crying. When she entered, appellant was face down on the floor being handcuffed, and he was not resisting, fighting, or struggling in any way.

Appellant's son, Casey, then five years old, was offered as a witness. Although in appellant's view, the trial court was of the opinion that Casey "was not a credible witness," and in the State's view, the trial court found that Casey "was not competent to testify," neither view is strictly corroborated by the record. When Casey said he knew what it meant to tell the truth, but he did not know what happens if he told a story, the trial court said:

> I will hear his testimony for what it's worth. Court is not of the opinion and this is on the record, that he is not credible to be received under—I don't think he understands the distinction between or what the consequences of telling the truth would be. Make it quick with the young man.

The remarks, however viewed, at least showed the court's decision to consider, albeit with preconceived skepticism, Casey's testimony.

With some inconsistency, Casey testified that no attorney other than present counsel had talked to him about what he remembered that night. He said two policemen threw his father to the floor because he was hitting his mother before the policemen arrived. He acknowledged that his father did not use any force against the policemen, did not struggle with them, did not try to get away from them, and did not hit them. He affirmed that he was not making up his story to help his father.

Appellant testified that he had tried, but had been unable, to contact his trial counsel on four or five occasions prior to trial. He received a letter from the attorney, telling him to be present with his witnesses in court at 9 o'clock a.m. on the day of trial. The attorney did not arrive until 10:35 or 10:40 that day. He talked with appellant for four or, at most, five minutes, and with Wells for a couple of minutes, immediately before trial began. The attorney did not discuss the facts of the case with appellant; he seemed more interested in what happened before the police arrived. Appellant told the attorney that Casey could tell him what happened, but the attorney made no effort to talk with or obtain the presence of Casey.

The court denied the motion for new trial. Appellant perfected the appeal.

■ The standard to measure the adequacy of representation by counsel at the guilt-innocence stage of trial was articulated in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), and adopted in Texas in *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex.Cr.App.1986). The articulation requires that ineffective assistance of counsel must be established by showing both that (1) counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *Strickland v. Washington*, 466 U.S. at 694, 104 S.Ct. at 2068.

■ Aware that the constitutional right to counsel does not mean errorless counsel whose competency is to be judged by hindsight, *Ex parte Cruz*, 739 S.W.2d 53, 58 (Tex.Cr.App.1987), but by the totality of counsel's representation at the time of trial, *Bridge v. State*, 726 S.W.2d 558, 571 (Tex.Cr.App.1986), we begin our consideration of appellant's contention with the presumption that trial counsel's conduct comported with reasonable, professional assistance. Then, to sustain his challenges to trial counsel's conduct, appellant must overcome the presumption that the conduct might be considered, as the State considers it, sound trial strategy. *Strickland v. Washington*, 466 U.S. at 689, 104 S.Ct. at 2065; *Jackson v. State*, 877 S.W.2d 768, 771 (Tex.Cr.App.1994).

■ Appellant met his burden to overcome the presumption by showing that, without judging by hindsight, trial counsel made

**880**

no effort to ascertain the facts of the case and did not seek out and interview potential witnesses. As a threshold matter, before trial counsel can render effective assistance, counsel must have a firm command of the facts of the case, which entails the responsibility to seek out and interview potential witnesses. *Ex parte Welborn,* 785 S.W.2d 391, 393 (Tex.Cr.App.1990). There is no indication that trial counsel attempted to interview the State's witness Larsen, or its potential witness Hooks, or otherwise make any investigation of the evidence against appellant. The undisputed evidence established that trial counsel spent, at most, five minutes talking with appellant and two minutes talking with Wells immediately before trial, and never once inquired about their version of the facts upon which the State based its criminal charge. Even though informed that Casey was an eyewitness to the events, trial counsel made no effort to learn what the child knew.

■ It follows that the combination of these circumstances verify that trial counsel's representation fell below an objective standard of reasonableness, *id.* at 396, and in no sense can his conduct be considered sound trial strategy. Trial counsel's abdication of his basic threshold responsibility to ascertain the facts and seek out and interview potential witnesses is the antithesis of sound trial strategy, *Ex parte Dunham,* 650 S.W.2d 825, 827 (Tex.Cr.App.1983), for unless and until counsel has made the necessary investigation of the facts and witnesses, it may not be argued that his course of conduct was within the realm of trial strategy. *Ex parte Duffy,* 607 S.W.2d 507, 526 (Tex.Cr.App.1980). The remaining question, then, is whether trial counsel's unprofessional errors undermined confidence in the outcome of the trial.

■ At the bench trial, the testimony of the only two witnesses, Larsen for the State and appellant for himself, was diametrical on the issue of resisting arrest. Obviously, the resolution of the issue depended upon the credibility accorded the witnesses. It was the professional duty of appellant's trial counsel, particularly in this situation, to present all available evidence to support his defense, *id.* at 518; however, because counsel made no investigation of the facts, appellant was denied the benefit of the favorable testimony of Wells and Casey tending to support his credibility and the weight of his testimony. Given this record, and the right to counsel guaranteed by the federal and state constitutions, we are not willing to leave appellant to the mercies of incompetent trial counsel, *McMann v. Richardson,* 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970); thus, we have no hesitancy in holding that trial counsel's unprofessional errors undermined confidence in the outcome of the trial. *Accord Ex parte Welborn,* 785 S.W.2d at 396. Appellant's point of error is sustained.

The judgment of the trial court is reversed and the cause is remanded for a new trial.