**Opinion filed August 2, 2012**



In The

# Eleventh Court of Appeals

_____

## No. 11-10-00349-CR

_____

## ELISABETH PANDO, Appellant

## V.

## STATE OF TEXAS, Appellee

**On Appeal from the 385th District Court**

**Midland County, Texas**

**Trial Court Cause No. CR31171**

### M E M O R A N D U M   O P I N I O N

Elisabeth Pando appeals from the revocation of her community supervision that she had received following her conviction of theft by check. Following Pando's plea of not true to the allegations contained in the State's motion to revoke, the trial court revoked Pando's community supervision and assessed the original punishment of two years in the Texas Department of Criminal Justice, State Jail Division, and the remaining balance of a $500 fine. In two issues on appeal, Pando contends that the trial court erred when it denied her motion for new trial because evidence presented at the hearing on her motion showed that she did not receive effective assistance of counsel because her counsel failed to timely inform her of a plea offer, failed to offer meaningful advice, failed to consult with her, failed to investigate the case, and failed to

present a meaningful defense. In Issue Two, she contends that, if we determine that her motion for new trial was insufficient, she received ineffective assistance of trial counsel because her counsel had little interaction with her, had no trial strategy, and failed to investigate the case, including a failure to interview witnesses. We affirm.

Pando contends in Issue One that the trial court erred in denying her motion for new trial because her trial counsel failed to timely inform her of a plea offer, failed to offer meaningful advice, failed to consult with her, failed to investigate the case, and failed to present a meaningful defense. We review a trial court's denial of a motion for new trial under the abuse of discretion standard. *Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004). We do not substitute our judgment for that of the trial court, but decide whether the trial court's decision was arbitrary or unreasonable. *Id.* We must view the evidence in the light most favorable to the trial court's ruling and presume that all reasonable factual findings that could have been made against the losing party were made against that losing party. *Id.* A trial court abuses its discretion in denying a motion for new trial only when no reasonable view of the record could support the trial court's ruling.

Pando contended at the hearing on her motion for new trial that she was denied the effective assistance of counsel at trial because her trial counsel had no trial strategy, failed to prepare for her revocation hearing, and failed to advise her properly. In order to determine whether Pando's trial counsel rendered ineffective assistance, we must first determine whether Pando has shown that counsel's representation fell below an objective standard of reasonableness and, if so, then determine whether there is a reasonable probability that the result would have been different but for counsel's errors. *Wiggins v. Smith*, 539 U.S. 510 (2003); *Strickland v. Washington*, 466 U.S. 668 (1984); *Andrews v. State*, 159 S.W.3d 98 (Tex. Crim. App. 2005); *Thompson v. State*, 9 S.W.3d 808 (Tex. Crim. App. 1999). We must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and Pando must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Strickland*, 466 U.S. at 689; *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Strickland*, 466 U.S. at 690. An allegation of ineffective assistance must

be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson*, 9 S.W.3d at 814.

The State contends that the trial court did not have jurisdiction to consider Pando's claims of ineffective assistance of counsel because her motion for new trial did not include that claim. It contends that, because the trial court was without jurisdiction to consider the claim, we may not consider the record of that hearing in our consideration of this appeal. As grounds for her motion for new trial, Pando alleged, as the only basis for the motion, that "[t]he verdict in this cause is contrary to the law and the evidence." Where a defendant presents evidence in a hearing on a motion for new trial on a claim not presented in his or her motion for new trial, the trial court has jurisdiction to rule upon the merits of that claim by granting or denying the motion for new trial. *Clarke v. State*, 270 S.W.3d 573, 580 (Tex. Crim. App. 2008) (holding that the trial court had jurisdiction to consider claim of a violation of *Brady v. Maryland*[1] even if the motion for new trial alleged only that the verdict was contrary to the law and the evidence). We hold that the trial court had jurisdiction to consider Pando's claim regarding ineffective assistance of counsel.

Pando asserted at the conclusion of the hearing on her motion for new trial that her trial attorney, Justin Wayne Low, was ineffective because he prepared the case in five minutes, because he did not call witnesses other than Pando, and because he did not investigate to see if there were any other witnesses.

Low testified that Pando retained him in connection with the motion to revoke her community supervision. He said he met with her prior to the final pretrial date. He stated that he conveyed to Pando a plea offer of six months "to do" and that she indicated she did not want to go to jail. He indicated he told her that her only other option was to have a hearing and put herself before the court.

Low testified that he understood Pando's position with respect to the motion to revoke to be that she had been incarcerated for a significant period of time in another case after being placed on community supervision in this case and that, when she got out, she did not know that she had to start reporting. He said he provided Pando with a letter from the Texas Department of Criminal Justice indicating the amount of time Pando had served in the case for which she was incarcerated and her release date. Low acknowledged that he subpoenaed no witnesses and did

---

[1]*Brady v. Maryland*, 373 U.S. 83 (1963).

not attempt to ask the trial court for funds to get an investigator. He also acknowledged that he did not ask Pando for funds for an investigator or call any witnesses other than Pando. He stated that he did not think he ever asked Pando for the names of any witnesses. He also indicated that he thought he and Pando had talked about whether there was anyone who could help her but that he did not think she had anyone who was worth calling.

Low testified that he met again with Pando at the courthouse just prior to the hearing on the motion to revoke. He said he was already prepared. He insisted that he met her at his office once and the courthouse about three times. He denied that his conversations with Pando at the courthouse consisted of five-minute conversations. He stated that he and Pando did not have much to talk about because she had nothing new and he knew everything about her case. Low related that he advised Pando that the court would have the right to revoke her community supervision and could levy the full twenty-four months against her.

In response to questioning by the State, Low testified that evidence regarding Pando's defense of incarceration was presented to the trial court, which found the allegations were true except with regard to the period of time Pando was incarcerated. He stated that Pando testified during the hearing about what she had been doing since her release from incarceration and the reasons why she was justified in not fulfilling the requirements of her community supervision. He said he was never asked to call any other witnesses to justify her failure to comply with the conditions of her community supervision.

On further questioning by Pando's counsel, Low acknowledged that he did not recall whether he had asked Pando for any names of witnesses. He said he told Pando that her incarceration was not a complete defense because of the period of time not covered by the incarceration.

Pando testified that her husband retained Low as her counsel and that Low bonded her out of jail. She indicated that, prior to her trial, she met with Low and talked to him about her case for about five minutes. She said that, once when she did not show up, she came late after being contacted by Low's office. She stated that Low did not discuss the case with her while they waited to see the judge. She said that she told him she did not want to take the six months and did not indicate to him that she needed more time to talk to him about it.

Pando acknowledged that Low did not indicate to her that he thought she should get credit for the time she was in state jail. She said he told her he was going to try to get some of

that time. She insisted that she believed Low would get her credit for that time and did not understand that she could not receive credit for that time.

Pando testified that Low never asked for the names of any witnesses, friends, family, or employers. She acknowledged that she did not know if Low had ever contacted her original attorney in this case or the attorney in the case that resulted in her incarceration. She said he never met with her to develop a defense or develop any mitigating factors. She also noted that Low did not call any witnesses in her trial to try to mitigate the sentence she could receive.

After testifying that her belief that she would receive some credit for the time she had been incarcerated was not based on conversations she had with Low, she said that her belief was based on conversations with him. She said Low did not prepare her for the hearing.

On cross-examination, Pando acknowledged she never told the court that she was not ready or that she needed a new lawyer because Low was not talking to her, nor did she say that she needed more time to get witnesses there. She acknowledged that she never asked Low to seek a continuance because they were not ready. Pando further acknowledged that she had been involved with motions to revoke before and was familiar with court and with the process.

During cross-examination, the following exchange occurred:

Q. Okay. So could you have said to Mr. Low that, you know, "We need more time to get witnesses"?

A. Could I have said that to him?

Q. Yes, ma'am.

A. Yes, if I really thought I needed them.

Q. So you didn't really think you needed any other witnesses?

A. Well, no, I don't know.

Q. Okay. So why would Mr. Low be required to go look for witnesses, if you didn't even think any were necessary?

A. I don't know.

Pando acknowledged that she was given ample opportunity to explain to the judge what happened to her with respect to incarceration and why she did not think she had to report. She also acknowledged that she did not think she could have presented any further evidence with

5

regard to her incarceration and why she did not report during the time she was incarcerated. She related that she was able to testify about mitigating evidence, including not knowing she was supposed to report after her release from incarceration, and about her activities since her release. On redirect examination, Pando noted that Low had not asked her for the names of any witnesses. On recross-examination, Pando acknowledged that she did not feel the need to tell Low anything about witnesses because there was not anyone else.

We hold that the trial court did not abuse its discretion in denying Pando's motion for new trial. The record shows that Low presented evidence to the court as to Pando's incarceration during the time she was on community supervision and presented, through Pando, mitigating evidence as to why she did not comply with the requirements of community supervision after she was released from confinement in her other case. Pando acknowledged that there were no other witnesses of which she was aware. Pando has not shown that Low lacked a trial strategy, and even if he erred in some way, she has failed to show what he could have done differently that would have caused a different result.

With respect to her claim that counsel was ineffective for failing to interview and call witnesses, Pando relies on the cases of *Smith v. State*, 894 S.W.2d 876 (Tex. App.—Amarillo 1995, pet. ref'd), and *State v. Thomas*, 768 S.W.2d 335 (Tex. App.—Houston [14th Dist.] 1989, no pet.). In both cases, counsel was found to be ineffective for failing to interview or call witnesses in support of the defense. *Smith*, 894 S.W.2d at 880; *Thomas*, 768 S.W.2d at 337. We find both of those cases to be distinguishable because, in those cases, the witnesses whom counsel should have presented at trial were identified. In contrast, in the case at bar, even Pando acknowledged at the hearing on the motion for new trial that there were no other witnesses.

In arguing that her counsel was ineffective for failing to advise her that the trial court could not credit her state jail time in another case toward her sentence, Pando relies upon the case of *Trinh v. State*, 974 S.W.2d 872 (Tex. App.—Houston [14th Dist.] 1998, no pet.). We find the case to be distinguishable. In *Trinh*, defense counsel precluded the possibility of her client receiving probation by electing to have the jury assess punishment, with the intention of later changing her election to the trial court. 974 S.W.2d at 876. She was unaware that she could not change her election without the consent of the State. *Id.* In the case at bar, Pando testified that Low never indicated to her that he thought she should receive credit for the fifteen months or so that she was in state jail. Later, she testified that she thought her state jail time was

6

going to get her less time in this case but that that was not based on the conversations she had with Low. Then, she testified that her belief that the amount of time she had spent in the other case would be used for credit in this case was based on her conversations with Low. She also testified that Low said he was going to try to get her some time. Pando testified that she spent time with other inmates at state jail who speculated that maybe her two cases would "run concurrent."

Low testified that he did not believe that Pando should receive credit for the time she was incarcerated in another case. While acknowledging that he had indicated to Pando that he wanted to ascertain how much credit she should have, he stated that he was referring to credit regarding any holds from the court on the motion to revoke. We note that, even if the trial court could not have given Pando credit for the time she was incarcerated in another case, the trial court was authorized to reduce Pando's original sentence had the court chosen to do so. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 23(a) (West Supp. 2011).

Pando's second issue was contingent on our finding that her motion for new trial did not confer jurisdiction on the trial court to determine the issue of ineffective assistance of counsel because it was not alleged as the basis for the motion. Inasmuch as we have held that the trial court did have such jurisdiction, we need not consider her second issue. We overrule Issues One and Two.

The judgment of the trial court is affirmed.

PER CURIAM

August 2, 2012

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Hill.[2]

---

[2]John G. Hill, Former Chief Justice, Court of Appeals, 2nd District of Texas at Fort Worth, sitting by assignment.

7