

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

Nos. 04-13-00390-CR through 04-13-00392-CR

David **LOVEN**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 186th Judicial District Court, Bexar County, Texas
Trial Court Nos. 2013-CR-3348, 2013-CR-3349 & 2013-CR-3350
Honorable Maria Teresa Herr, Judge Presiding

Opinion by: Rebeca C. Martinez, Justice

Sitting: Catherine Stone, Chief Justice
Karen Angelini, Justice
Rebeca C. Martinez, Justice

Delivered and Filed: October 15, 2014

AFFIRMED

In three related cases, Loven appeals his convictions for super aggravated sexual assault of a child, indecency with a child, sexual performance by a child, and possession of child pornography. We affirm the trial court's judgment in all three cases.

### BACKGROUND

Loven was indicted on multiple counts in three cases involving two known complainants and one unknown complainant. In Trial Court Cause No. 2013-CR-3348 involving complainant K.N., who was a child under the age of 17 years old, Loven was charged with eleven counts

consisting of one count of indecency with a child by sexual contact, one count of sexual performance by a child, and multiple counts of possession of child pornography. In Trial Court Cause No. 2013-CR-3350 involving complainant P.T., who was a child under the age of 6 years old, Loven was charged with thirty-six counts consisting of one count of super aggravated sexual assault of a child, several counts of sexual performance by a child, and multiple counts of possession of child pornography. The case involving unknown complainants consisted of forty-five counts of possession of child pornography under Trial Court Cause No. 2013-CR-3349. The three cases were consolidated for purposes of trial upon Loven's request. Loven pled not guilty by reason of insanity to each count.

At trial, the two known victims, P.T. and K.N., who were not related, testified that Loven was a family friend who began sexually assaulting them and taking photographs of them at ages four and seven, respectively. P.T., six years old at the time of trial, testified that Loven touched and licked her private part "in the front where she pees" and took pictures of her front private part. P.T.'s mother testified as an outcry witness that Loven had been a close family friend for 25 years and spent a lot of time with her children, especially P.T. On New Year's Eve night of 2011, P.T. told her mother that Loven had put his hand between her legs outside her clothing and "pushed really, really hard," and had previously licked her vagina, and taken pictures of her with her pants pulled down in exchange for Hello Kitty gifts. A DVD of P.T.'s forensic interview with Caroline Briones at Child Safe was admitted and played for the jury. Dr. John Melville, a child abuse pediatrician at the Center for Miracles, testified that when he interviewed P.T. she was not forthcoming and did not state that any abuse or photographs occurred. Dr. Nancy Kellogg, a child abuse pediatrician at the same facility, testified that during the sexual assault examination P.T. stated that Loven made her privates hurt by touching them outside her clothes. P.T. demonstrated by making a stroking motion and pointing to her genitals. The physical exam of P.T. showed a

labial adhesion which is a common finding in young children that can be caused by hygiene habits, irritation, or any kind of trauma.

K.N., who was 21 years old at the time of trial, testified that she met Loven when she was five years old and that he treated her like his own daughter, helping her with homework and taking her out for dinner and ice cream. However, when she was seven or eight years old, Loven began taking pictures of her in sexually provocative poses; a couple of times he pulled her pants down for the picture. Loven progressed to touching her vagina over her clothes and then under her clothes. K.N. never told anyone and last saw Loven when she was fourteen years old. Detectives testified that a search of Loven's house yielded multiple photographs, video tapes, and computer images of P.T. and K.N. in various sexual poses and performances. Also seized were notebooks with written notes describing the images and listing P.T.'s and K.N.'s names along with other girls' names, and listing Hello Kitty items and other items bought along with their prices. There were also written entries by Loven describing his thoughts about his sexual abuse of P.T. and taking pictures of P.T. in sexual poses. Plastic bags containing panties and locks of hair with the names "P.T., four years old," and "K.N., 10 years old" written on top were also recovered inside Loven's home.

After the State rested, Loven called Dr. Brian Skop as a defense witness. A court-appointed psychiatrist, Dr. Skop examined Loven prior to trial and found him both competent to stand trial and sane at the time of the offenses. The trial court granted the State's motion in limine on any hearsay statements made by Loven to Dr. Skop as outside the scope of the hearsay exception for out-of-court statements made for purposes of medical diagnosis or treatment. *See* TEX. R. EVID. 803(4). Dr. Skop proceeded to testify that, in his opinion, Loven suffered from several mental disorders, including personality, mood, and anxiety disorders, as well as pedophilia, but was not legally insane at the time of the charged conduct.

The jury found Loven guilty on all eighty-eight counts submitted to them. At the conclusion of the punishment hearing at which additional child pornography images were admitted and K.N. testified about the negative effect of Loven's conduct on her life, the jury recommended the maximum punishment on each count. The trial court assessed the maximum sentence on each count, with the sentences ranging between 10 years' imprisonment to life without parole. The court denied the State's request to run the sentences consecutively. Loven now appeals.

## ANALYSIS

Loven raises two issues on appeal, asserting he received ineffective assistance of counsel at trial and that the trial court erroneously disallowed a proper question posed on voir dire.

### *Ineffective Assistance of Counsel*

To establish ineffective assistance, Loven has the burden to prove that his trial counsel's performance was deficient and that it prejudiced his defense, in that there is a reasonable probability that, absent counsel's errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984); *Perez v. State*, 310 S.W.3d 890, 892-93 (Tex. Crim. App. 2010). Loven must provide a sufficient record that affirmatively demonstrates ineffective assistance by a preponderance of the evidence, and overcomes the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). To establish deficient performance, Loven must show that counsel's performance fell below an objective standard of reasonableness and must rebut the presumption that counsel's decisions were based on sound trial strategy. *Thompson*, 9 S.W.3d at 812-13. In evaluating counsel's performance, we do not focus on isolated acts or omissions, but review the totality of counsel's representation. *Id.* at 813. Failure to prove either prong of the *Strickland* test will defeat an ineffective assistance claim. *Id.*; *Perez*, 310 S.W.3d at 893. The standard for

reviewing counsel's performance has never been interpreted to mean a defendant is entitled to "errorless or perfect counsel." *Badillo v. State*, 255 S.W.3d 125, 129 (Tex. App.—San Antonio 2008, no pet.) (quoting *Ex parte Welborn*, 785 S.W.2d 391, 393 (Tex. Crim. App. 1990)).

Loven did not file a motion for new trial raising ineffective assistance, and therefore the record was not developed as to the reasons underlying counsel's conduct. *See Thompson*, 9 S.W.3d at 813. Loven acknowledges the difficult task of establishing ineffective assistance on direct appeal based solely on the trial record, but contends that, in this case, the absence of a record exploring the reasons underlying counsel's conduct is not fatal to his claim. *See Freeman v. State*, 125 S.W.3d 505, 506 (Tex. Crim. App. 2003) (stating the likelihood that the trial record is inadequate for purposes of ineffective assistance claim, but recognizing that some claims are properly disposed of on direct appeal where the ineffectiveness is "so apparent from the record"); *see also Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001) (noting that absent any evidence of counsel's reasons for the challenged conduct, the court will "commonly assume a strategic motivation if any can possibly be imagined," and will not find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it"). Loven asserts there could be no plausible strategic reason for counsel's conduct in (1) failing to present any substantive evidence in support of his insanity defense, and (2) failing to preserve error with respect to the court's denial of a defense challenge for cause during voir dire.

### 1. *Failure to Present Evidence in Support of Insanity Defense*

Loven argues that his counsel's performance was deficient because he failed to present any substantive evidence to establish Loven's defense of insanity. Specifically, Loven asserts his counsel failed to seek out and present potential witnesses in support of Loven's claim that he was insane at the time of the offenses. *See Smith v. State*, 894 S.W.2d 876, 880 (Tex. App.—Amarillo 1995, pet. ref'd) (general duty to seek out and interview potential witnesses). A defendant is

generally presumed to be sane and bears the burden of proof when raising the affirmative defense of insanity. TEX. PENAL CODE ANN. § 8.01(a) (West 2011); *Martinez v. State*, 867 S.W.2d 30, 33 (Tex. Crim. App. 1993). To establish an insanity defense, a defendant must prove by a preponderance of the evidence that, at the time of the charged conduct, he did not know that his conduct was wrong due to a severe mental disease or defect. TEX. PENAL CODE ANN. § 8.01(a); *Martinez*, 867 S.W.2d at 33. "Wrong" means illegal in the context of the insanity defense. *Ruffin v. State*, 270 S.W.3d 586, 592 (Tex. Crim. App. 2008). If the defendant knows that his conduct is illegal by society's standards, then he understands his conduct is "wrong," even if, due to a mental disease or defect, he thinks his conduct is morally justified. *Id.* The issue of insanity is ultimately a determination to be made by the jury, with respect to the credibility of the witnesses, the weight of the evidence, and the limits of the defense itself. TEX. CODE CRIM. PROC. ANN. art. 46C.151 (West 2006); *Bigby v. State*, 892 S.W.2d 864, 878 (Tex. Crim. App. 1994).

After Loven gave notice of his intent to raise an insanity defense, the trial court appointed Dr. Skop as an objective expert to examine Loven and to testify at trial. *See* TEX. CODE CRIM. PROC. ANN. art. 46C.101 (West 2006). As noted, Loven's counsel called Dr. Skop as a defense witness. While Dr. Skop testified that, based on his evaluation of Loven in September 2012, his opinion was that Loven was competent to stand trial, he acknowledged that it was possible Loven's condition could deteriorate to the point of incompetence. Dr. Skop also acknowledged under questioning that, even though his opinion was that Loven was sane, i.e., knew his actions were wrong, at the time of the charged conduct, another psychiatrist could form a different opinion. Dr. Skop explained his diagnosis that Loven suffered from personality disorder, anxiety disorder, and mood disorder, as well as from stimulant abuse. Dr. Skop also stated that his review of Loven's medical records revealed that Loven self-reported as having bipolar disorder. Dr. Skop stated that, in his opinion, the symptoms Loven discussed during the interview did not support a diagnosis of

bipolar disorder. In response to a subsequent question from defense counsel, Dr. Skop later acknowledged that Loven's records showed that the Social Security Administration had designated Loven as bipolar. Defense counsel also questioned Dr. Skop about sexual obsessions and compulsions, and elicited his opinion that Loven had a sexual attraction to young children, which is a mental condition known as pedophilia for which treatment protocols exist. Thus, the record shows Loven's counsel did present evidence of the various mental conditions from which Loven suffered. In addition, the court's jury charge included the option to find Loven "not guilty by reason of insanity" on each count, showing that the trial court determined there was competent evidence raising the issue of Loven's insanity. *See* TEX. CODE CRIM. PROC. ANN. art. 46C.151(a) (providing that the issue of the defendant's sanity shall be submitted to the jury "only if the issue is supported by competent evidence").

Loven complains that defense counsel made no attempt to re-visit the admission of certain out-of-court statements he made to Dr. Skop after the trial court granted the State's motion in limine as to any hearsay statements by Loven during the interview. To the contrary, the record shows that Loven's counsel argued to the court that the State opened the door to Loven's hearsay statements during its cross-examination of Dr. Skop; the trial court, however, disagreed.

Loven also complains that defense counsel failed to present any additional witnesses or evidence in support of his insanity defense. Loven fails to identify any potential witnesses and show their availability to testify and that their testimony would have been beneficial to his defense. *See Ex parte White*, 160 S.W.3d 46, 52 (Tex. Crim. App. 2004); *Vasquez v. State*, 2 S.W.3d 355, 361 (Tex. App.—San Antonio 1999, pet. ref'd). The record reflects that another defense witness, Jesse Fator, was expected but failed to show up at trial. Loven asserts his counsel was deficient in failing to ensure Fator's appearance by subpoenaing him. However, Loven's counsel stated on the record that he had called Fator that morning and Fator had confirmed that he would be in court at

10:30 a.m. Based on the record, counsel had no reason to believe a subpoena was necessary to secure Fator's appearance. In addition, Loven has failed to show how Fator's testimony would have benefitted him. *See White*, 160 S.W.3d at 52; *Vasquez*, 2 S.W.3d at 361.

Loven has failed to rebut the strong presumption that counsel's performance fell within the wide range of reasonable professional assistance, and has thus failed to establish deficient performance. *See Salinas*, 163 S.W.3d at 740.

### 2. *Failure to Preserve Error – Denial of Challenge for Cause*

Loven asserts the trial court erroneously denied his challenge for cause to Venire Member No. 36, but that his counsel failed to preserve the error for review and therefore rendered ineffective assistance.

Article 35.16 of the Code of Criminal Procedure provides several grounds on which a defendant may challenge a potential juror for cause, including a bias or prejudice against the defendant or against the applicable law. TEX. CODE CRIM. PROC. ANN. art. 35.16(a)(9), (c)(2) (West 2006). The test is "whether a bias or prejudice would substantially impair the venire member's ability to carry out the juror's oath and judicial instructions in accordance with the law." *Davis v. State*, 329 S.W.3d 798, 807 (Tex. Crim. App. 2010). The proponent of the challenge for cause has the burden to establish that the venire member understands the requirements of the law and cannot overcome his or her prejudice well enough to follow the law. *Id.* (noting the law must be explained to the venire members and they must be asked whether they can follow that law, regardless of their personal views). Denial of a proper challenge for cause is error. *Johnson v. State*, 43 S.W.3d 1, 5 (Tex. Crim. App. 2001). The trial court's ruling on a challenge for cause is reviewed with considerable deference to the court's position in evaluating the venire member's demeanor and responses and may be reversed only for a clear abuse of discretion. *Davis*, 329 S.W.3d at 807; *Gardner v. State*, 306 S.W.3d 274, 295-96 (Tex. Crim. App. 2009). Harm is

demonstrated, and the error is reversible, when the record shows the defendant: (1) asserted a clear and specific challenge for cause; (2) exercised a peremptory challenge on the venire member whom the court erroneously failed to excuse for cause; (3) exhausted all of his peremptory challenges; (4) was denied a request for additional peremptory challenges; and (5) identified an objectionable venire member who sat on the jury. *Davis*, 329 S.W.3d at 807; *Johnson*, 43 S.W.3d at 5-6.

Loven challenged Venire Member No. 36 for cause based on a bias or prejudice against him and the applicable law arising out of her personal experiences in working with child abuse victims. The venire member vacillated in her answers, first stating that her experience with child abuse victims undermined her ability to be impartial in a child sex abuse case, then stating she could follow the law requiring her to find Loven "not guilty" if the State failed to meet its burden of proof, then stating she could not follow the law requiring her to consider probation, and then agreeing she could consider probation in certain abuse cases, and finally stating, "But I'd rather just not." In denying Loven's challenge for cause, the trial court explained that, "I'm not getting on her answers that that means she has already made up her mind or that she's already biased against your client. I am getting that she would rather not serve, but that's not sufficient for me to decide to grant the challenge for cause. . . ." When a venire member's answers are "vacillating, unclear, or contradictory," the trial court's ruling on the challenge for cause is given particular deference. *Davis*, 329 S.W.3d at 807; *Gardner*, 306 S.W.3d at 296. Loven has not shown that the court's denial of his challenge for cause was a clear abuse of discretion based on the record of the voir dire exchange; therefore, he has failed to show his counsel was deficient in not requesting additional peremptory challenges.

Further, even if the court's ruling was error, Loven has not identified an objectionable juror who was seated on the jury, which is one of the factors necessary for bringing a successful challenge-for-cause claim. *See Davis*, 329 S.W.3d at 807; *Johnson*, 43 S.W.3d at 5-6. Therefore,

defense counsel's failure to request additional peremptory challenges is not the sole factor precluding Loven from prevailing on his challenge-for-cause issue.

We conclude that Loven has failed to establish that his counsel rendered deficient performance under either of the grounds he alleges. Because Loven has failed to prove the first prong of the *Strickland* test, his claim of ineffective assistance fails. *Thompson*, 9 S.W.3d at 813; *Perez*, 310 S.W.3d at 893.

### *Improper Commitment Question on Voir Dire*

In his second issue, Loven argues that the trial court improperly ruled that a question posed by defense counsel to a prospective juror was an improper commitment question. We apply an abuse of discretion standard to a trial court's ruling restricting voir dire questioning. *Hernandez v. State*, 390 S.W.3d 310, 315 (Tex. Crim. App. 2012). The trial court has discretion to restrict voir dire questions that are "confusing, misleading, vague and broad, or are improper commitment questions." *Id.*; *Barajas v. State*, 93 S.W.3d 36, 38-39 (Tex. Crim. App. 2002). A commitment question asks a prospective juror to resolve, or refrain from resolving, an issue in a particular way based on a particular fact. *Davis v. State*, 349 S.W.3d 517, 518 (Tex. Crim. App. 2011); *see Hernandez*, 390 S.W.3d at 315-16 (holding question was improper commitment question because it sought a "yes" or "no" answer and committed the prospective juror to a determination of whether a particular circumstance, being abused as a child, was mitigating ). Commitment questions usually require a "yes" or "no" answer. *Standefer v. State*, 59 S.W.3d 177, 179 (Tex. Crim. App. 2001). Commitment questions are proper only where the applicable law requires a certain commitment from jurors, such as considering the full range of punishment. *Id.* at 181.

During defense counsel's voir dire of Venire Member No. 14, the following exchange occurred:

Q:      One of the disabilities that you mentioned, . . . was autism?

A:      Yes.

Q:      Okay.  You understand that autism, there's a wide spectrum from very mild to completely - - kids that are incapable of speech, of basically anything?

A:      Yes.

Q:      So that would be certainly a mental disease or defect that you would consider someone with that level of capacity being prosecuted, correct?

A:      Yes.

The State objected to the last question as being an improper commitment question, and the trial court sustained the objection.  Loven argues on appeal that the challenged question was not, in reality, a commitment question because, although it asked for a "yes" or "no" answer, it merely sought to explore the venire member's experiences and beliefs regarding of autism[1] and did not ask the prospective juror to commit to resolve an issue a certain way.

Regardless of whether the question was a true commitment question, there was no abuse of discretion because defense counsel was permitted to ask the venire member an almost identical question concerning autism, with the addition of a qualifier based on the degree of severity:

Q:      But you understand that autism is a mental disease or defect that could, depending on the severity of it and the fact situation be such that it would render a person incapable of being able to distinguish right from wrong?

A:      Depending on the severity - -

Q:      Sure.

A:      - - it could.  The reason why I say that is because I know someone with autism, but they're also mentally retarded as well as autistic.

The record shows the trial court merely sustained an objection to the form of Loven's question, and did not place an absolute restriction on the subject area of the excluded question.

---

[1] No evidence was presented at trial that Loven suffers from autism.

*See Hernandez*, 390 S.W.3d at 316. Loven's counsel was able to probe the prospective juror's beliefs and experiences on the subject of autism; therefore, there was no abuse of discretion. *Id.*; *see Howard v. State*, 941 S.W.2d 102, 108-12 (Tex. Crim. App. 1996), *overruled on other grounds,* 424 S.W.3d 535 (Tex. Crim. App. 2014) (where defendant was permitted to question venire members regarding the substance of the restricted questions, although in a different form, there was no abuse of discretion).

### *Conclusion*

Based on the foregoing reasons, we overrule Loven's issues on appeal and affirm the trial court's judgments.

Rebeca C. Martinez, Justice

DO NOT PUBLISH